IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSEPH YOUNG,

    *Petitioner*,

    v.                                 Criminal No. ELH-13-0151 (#25)

UNITED STATES OF AMERICA,

    *Respondent.*

## MEMORANDUM

Thie United States Probation Office ("U.S.P.O.") has submitted two requests for early termination of the supervised release of defendant Joseph Young.  ECF 2290 (1/15/26), ECF 2291 (2/6/26) (collectively, the "Request").[1]  The U.S.P.O. has advised that Assistant United States Attorney Seema Rood does not oppose the request.[2]  But, the government has not submitted a response

Based on my involvement in this case before and after trial, I have a great deal of familiarity with the case and with the defendant.  For the reasons that follow, I shall deny the Request.

### I.      Factual and Procedural Background

### A.  Summary

At the relevant time, Young was a member of a gang known as the Black Guerilla Family ("BGF").  In 2013, Young was one of 44 defendants indicted on serious charges, including racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), under the Racketeer Influenced and

---

[1] The substance of both requests appears identical.  But, ECF 2291 was addressed to the late Judge Motz.

[2] Ms. Rood was not involved in the prosecution of this case.  One of those prosecutors has since died and the other has left the U.S. Attorney's Office.  The Court does not know if Ms. Rood is familiar with the underlying case.

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; conspiracy to distribute and possess with intent to distribute controlled dangerous substances, in violation of 21 U.S.C. § 846; and money laundering conspiracy, under 18 U.S.C. § 1956(h).

The criminal charges were rooted in a pervasive criminal enterprise at the Baltimore City Detention Center ("BCDC"), a facility for pretrial detainees. The defendants generally consisted of two groups: BGF members who were inmates at BCDC, and corrupt correctional officers who worked at BCDC and helped to facilitate the enterprise. The Second Superseding Indictment (ECF 869), which was the operative charging instrument, alleged that the racketeering enterprise spanned the period from 2007 to November 2013. *Id.* ¶ 11 at 6.[3]

This case was assigned to me at the time of indictment. I ruled on many pretrial motions, took many guilty pleas from codefendants, and conducted sentencing proceedings for the many codefendants who pleaded guilty. However, Judge J. Frederick Motz presided at the trial.

Young was one of only eight defendants who proceeded to a jury trial that began on November 17, 2014. On February 5, 2015, Young was convicted of all charges. Four other defendants were also convicted. ECF 1425; ECF 1426. Two of the five defendants who were found guilty were BGF gang members who had been inmates at BCDC. The other three were correctional officers who worked at BCDC.

On June 24, 2015, Judge Motz sentenced Young to a total term of imprisonment of 180 months (fifteen years). *See* ECF 1709 (Judgment). On appeal to the Fourth Circuit, the court affirmed all of the convictions but vacated Young's sentence and remanded for resentencing. ECF

---

[3] Citations refer to the electronic pagination as it appears on CM/ECF.

1992; *see United States v. Carrington, et al.*, 700 F. App'x 224 (4th Cir. 2017).[4]  At that point, the case was returned to me.  In connection with Young's resentencing, I held several hearings and, on March 22, 2018, I issued a lengthy Memorandum Opinion and Order that resolved various disputes related to sentencing.  *See* ECF 2085, ECF 2086.

On March 28, 2018, I sentenced Young to a term of 170 months of imprisonment with three years of supervised release.  *See* ECF 2089; ECF 2091 (Amended Judgment).  That sentence was affirmed by the Fourth Circuit in a per curiam opinion issued on January 9, 2019.  ECF 2144.  The mandate issued on January 31, 2019.  ECF 2147.

### B.  Resentencing and Second Appeal

As noted, the Fourth Circuit affirmed Young's convictions but vacated his original sentence, which had been imposed by Judge Motz.  In its view, the original sentencing court failed to resolve disputed factual matters that were pertinent to the calculation of Young's advisory sentencing guidelines range ("Guidelines" or "U.S.S.G.").  *Carrington*, 700 F. App'x at 234.

On remand, counsel for both sides filed numerous motions, exhibits, and memoranda.  *See* Docket, beginning at ECF 2006.  Between November 28, 2017 and March 28, 2018, I conducted several hearings.  *See* ECF 2019; ECF 2021; ECF 2036; ECF 2041; ECF 2046; ECF 2078; ECF 2089.  And, as noted, on March 22, 2018, I issued a forty-five page Memorandum Opinion (ECF 2085), resolving multiple disputes pertinent to sentencing.

In the Memorandum Opinion, I reviewed, *inter alia*, the evidence as to the drug quantity foreseeable to Young.  *Id.* at 12-35.  I concluded, *id.* at 35:

> Based on the evidence as to Young's personal involvement with drug trafficking during his incarceration; Young's stature in BGF, as a Bushman who outranked [Tavon] White and a person with considerable authority, particularly as

---

[4] At trial, on appeal, and in regard to the resentencing, Young was represented by the same attorney.

to the floor of BCDC where he was detained; BGF's extensive drug trafficking organization at BCDC, of which Young was a part; and the many participants in the conspiracy, I am satisfied that the smuggling of Percocet pills into BCDC was within the scope of the jointly undertaken criminal enterprise and in furtherance of it. Moreover, as to Young, the criteria of U.S.S.G. § 1B1.3(a)(1)(B)(i)-(iii) have been met with respect to a drug quantity of at least Level 20, which only requires 300 Percocet pills of 30 milligrams each, or 600 Percocets of 15 milligrams each. Put another way, this drug quantity was clearly foreseeable to Young.

In addition, I found that Young was subject to certain upward adjustments under the Guidelines, including a two-level upward adjustment based on evidence that he used violence, made a credible threat to use violence, or directed the use of violence, and a two-level increase as to the racketeering count, under U.S.S.G. § 2S1.1(b)(2)(B). *Id.* at 35-38. Further, I found that Young was subject to a three-level upward adjustment based on his role in the offense, although the Presentence Report (ECF 1643, "PSR") awarded a four-level upward adjustment. *See* ECF 1643, ¶ 29.

Therefore, I found that Young had a final offense level of 31. ECF 2085 at 41-43. The PSR (ECF 1643) concluded that Young had a criminal history category of V. *Id.* ¶ 44. However, I determined that his criminal history category was a IV. ECF 2085 at 43-44.

At the resentencing on March 28, 2018, I sentenced Young to concurrent terms of imprisonment of 170 months, with credit for time served dating from May 2, 2013. *See* ECF 2091 at 2. The sentence was below the government's recommendation of 188 months. *See* ECF 2171 at 5. It was also below the original sentence of 180 months. In addition, I imposed a period of three years of supervised release. *Id.* at 3. An amended judgment was entered on March 29, 2018. ECF 2091.

Young filed a notice of appeal to the Fourth Circuit on April 4, 2018. ECF 2095. On January 9, 2019, in a per curiam decision, the Fourth Circuit affirmed the sentence. ECF 2144. As noted, the mandate issued on January 31, 2019. ECF 2147.

4

## II.    Discussion

Defendant entered onto supervised release on April 26, 2024.  As noted, the total period of supervised release is three years.  Supervision expires on April 25, 2027.  *See* ECF 2290 at 1: ECF 2291 at 1.  So, defendant has now completed almost two of the three years of supervised release.

Supervised release is "a post-incarceration program intended 'to assist individuals in their transition to community life.'"  *United States v. McLeod*, 972 F.3d 637, 641 (4th Cir. 2020) (quoting *United States v. Johnson*, 529 U.S. 53, 59 (2000)).  "'[T]he primary goal [of supervised release] is to ease the defendant's transition into the community after the service of a long prison term . . . or to provide rehabilitation to a defendant who has spent a fairly short period in prison . . . but still needs supervision . . . .'"  *United States v. Lewis*, 90 F.4th 288, 294 (4th Cir. 2024) (citation omitted).  Supervised release "essentially amounts to a *conditional* and *partial* release" from incarceration.  *Id.* (emphasis in *Lewis*).

Punishment is not "an appropriate reason" to impose supervised release.  *Lewis*, 90 F.4th at 294.  Rather, supervised release "fulfills rehabilitative ends, distinct from those served by incarceration." *Johnson*, 529 U.S. at 59.  In imposing supervised release, the court must consider, *inter alia*, the defendant's history and characteristics and the need to deter criminal conduct.  *Lewis*, 90 F.4th at 295.

The Request implicates 18 U.S.C. § 3583(e)(1).  Under 18 U.S.C. § 3583(e)(1), a court, after considering the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), may terminate a defendant's term of supervised release at any time after the expiration of one year of supervision, if the Court is "satisfied that such action is warranted

by the conduct of the defendant released and the interest of justice." *See United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999).

In assessing whether a defendant has met that burden, a court must consider:

(1) the nature and circumstances of the offense and the defendant's history and characteristics, 18 U.S.C. § 3553(a)(1);

(2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);

(3) the kinds of sentence and sentencing range established for the defendant's crimes, § 3553(a)(4)(A);

(4) pertinent policy statements issued by the United States Sentencing Commission, § 3553(a)(5);

(5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and

(6) the need to provide restitution to any victims of the offense, § 3553(a)(7).

Effective November 1, 2025, the Guidelines were amended as to the imposition, modification, termination, and revocation of supervised release. Of relevance here, the Amendment created a new section, § 5D1.4. Section 5D1.4(b) provides:

(b) EARLY TERMINATION.—Any time after the expiration of one year of supervised release and after an individualized assessment of the need for ongoing supervision, the court may terminate the remaining term of supervision and discharge the defendant if the court determines, following consultation with the government and the probation officer, that the termination is warranted by the conduct of the defendant and in the interest of justice. See 18 U.S.C. § 3583(e)(1).

The Commentary includes factors that a court may want to consider in determining whether early termination is appropriate:

(B)    **Early Termination.**—When determining whether to terminate the remaining term of supervised release under subsection (b), the court may wish to consider such factors as:

6

(i)      any history of court-reported violations over the term of supervision;

(ii)     the ability of the defendant to lawfully self-manage (e.g., the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);

(iii)    the defendant's substantial compliance with all conditions of supervision;

(iv)     the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;

(v)      a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and

(vi)     whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

To defendant's credit, he has maintained a stable residence and is gainfully employed. ECF 2290 at 1; ECF 2291 at 1. He has also obtained a license as a commercial truck driver. *Id.* The U.S.P.O. asserts that defendant has had no "noteworthy violations" and "presents no identified risk of harm to the public." *Id.*

I cannot overlook that the circumstances of the defendant's offenses were extremely serious. This was a RICO case involving a notorious gang engaged in a large-scale drug trafficking scheme at a detention center. Defendant was a gang member and a pretrial detainee who had a significant role in the operation. He was one of only eight defendants who went to trial. Defendant, who was born in May 1982, also has a prior record that includes armed robbery. *See* ECF 1643, ¶ 40 (armed robbery); ¶ 41 (second degree assault).

Defendant served a long prison sentence. He appears to be doing very well on supervised release. But, the supervision undoubtedly has helped guide defendant to the right path and to

remain there.    Moreover, conduct consistent with compliance is also consistent with the expectations and conditions of his supervision.  *See*, *e.g.*, *United States v. Guillatt*, 2005 WL 589354, *1 (E.D. Pa. 2005) ("The conduct cited by defendant in support of his Petition is commendable.  However, it is nothing more than what is required under the terms of defendant's probation.").  If mere compliance with the terms of the court's supervision were sufficient to merit early termination, "the exception would swallow the rule."  *Id.*; *see also United States v. Lohman*, 2007 WL 1430282, *1 (E.D. Wis. 2007) (holding that if simple compliance were sufficient for early termination, "every defendant who avoided revocation would be eligible for early termination").

In my view, supervised release is not unduly burdensome.  Nor is the length of supervised release unduly long, particularly when I consider the gravity of the crime, defendant's role in the case, and the length of time that defendant was removed from society.  The Court is of the view that supervised release is vital to help assure that defendant continues on the right path.

Moreover, the Court's primary focus concerns 18 U.S.C. § 3553(a)(1).  The nature and circumstances of the offense and the need to assure the safety of the public lead me to conclude that early termination of supervision is not appropriate.  To the contrary, the Court believes it is crucial to assist defendant in maintaining his status as a law-abiding, productive member of the community, because it provides defendant with structure and guidance.

Therefore, I shall deny the Request (ECF 2290, ECF 2291), without prejudice.  An Order follows.

Date:  April 10, 2026                                   /s/
                                         Ellen L. Hollander
                                         United States District Judge

8